IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KIMBERLY B.,[1]

        Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,

        Defendant.

Case No. 6:18-cv-00925-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

    Kimberly B. ("Plaintiff") brings this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The only issue in dispute on appeal is whether the Court should remand this case for further proceedings or an award of benefits. The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. § 405(g). For the reasons

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

explained below, the Court reverses the Commissioner's decision and remands for an award of benefits.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or [are] based on legal error.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either a grant or a denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

### I. PLAINTIFF'S APPLICATION

Plaintiff was born in January 1969, making her forty-one years old on May 25, 2010, the alleged disability onset date. (Tr. 73, 88.) Plaintiff has an associate's degree and past relevant work experience as a certified veterinary technician. (Tr. 22, 188, 264.) In her DIB application, Plaintiff alleges disability due to post-traumatic stress disorder ("PTSD"), depression, suicidal

ideation, fibromyalgia, obsessive compulsive disorder ("OCD"), and a learning disability.[2] (Tr. 74, 89.)

The Commissioner denied Plaintiff's DIB application initially and upon reconsideration, and on May 10, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 13.) Plaintiff and a vocational expert ("VE") appeared and testified at a hearing held on September 18, 2017. (Tr. 30-66.) On December 6, 2017, the ALJ issued a written decision denying Plaintiff's DIB application. (Tr. 13-23.) Plaintiff now seeks judicial review of that decision.

## II.     THE SEQUENTIAL ANALYSIS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is currently engaged in any substantial gainful activity; (2)

---

[2] To be eligible for DIB, "a worker must have earned a sufficient number of [quarters of coverage] within a rolling forty quarter period." *Herbert v. Astrue*, No. 07-cv-01016, 2008 WL 4490024, at *4 n.3 (E.D. Cal. Sept. 30, 2008). Workers accumulate quarters of coverage based on their earnings. *Id.* Typically, "the claimant must have a minimum of twenty quarters of coverage [during the rolling forty quarter period to maintain insured status] . . . . The termination of a claimant's insured status is frequently referred to as the 'date last insured' or 'DLI.'" *Id.* (citations omitted). Thus, Plaintiff's date last insured of December 31, 2015 (*see* Tr. 13) reflects the date on which her insured status terminated based on the prior accumulation of quarters of coverage. If Plaintiff established that she was disabled on or before December 31, 2015, she is entitled to DIB. *See Truelsen v. Comm'r Soc. Sec.*, No. 2:15-cv-02386, 2016 WL 4494471, at *1 n.4 (E.D. Cal. Aug. 26, 2016) ("To be entitled to DIB, plaintiff must establish that he was disabled . . . on or before his date last insured." (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999))).

whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* at 724-25. The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

The Commissioner bears the burden of proof at step five of the sequential analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954 (citations omitted).

### III. THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 13-23.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 25, 2010, the alleged disability onset date. (Tr. 15.) At step two, the ALJ determined that Plaintiff suffered from four severe impairments: (1) affective disorder, (2) anxiety disorder, (3) personality disorder, and (4) "shoulder/rotator cuff status post-surgery." (Tr. 15.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or equals a listed impairment. (Tr. 16.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to the following limitations: (1) Plaintiff needs to be limited to occasional "reach[ing] overhead with [her] right dominant upper extremity," (2) Plaintiff needs to be limited to "simple, routine tasks," (3) Plaintiff needs to

PAGE 4 – OPINION AND ORDER

be limited to "occasional contact with coworkers," and (4) Plaintiff cannot have "contact with the public." (Tr. 17.) At step four, the ALJ concluded that Plaintiff was unable to perform her past relevant work. (Tr. 22.) At step five, the ALJ concluded that Plaintiff was not disabled because a significant number of jobs existed in the national economy that she could perform, including work as a production assembler, a bottle packer, and an "electrical access" assembler. (Tr. 23.)

## DISCUSSION

As discussed above, the only issue in dispute on appeal is whether the Court should remand this case for further administrative proceedings or an award of benefits. As explained below, Plaintiff satisfies the credit-as-true standard, and the Court does not have any serious doubt about whether Plaintiff is disabled. Accordingly, the Court remands this case for an award of benefits.

### I.     APPLICABLE LAW

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citation omitted). In a number of cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014). The credit-as-true standard is met if the following conditions are satisfied: (1) "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion," (2) "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand," and (3) "the record has been fully developed

and further administrative proceedings would serve no useful purpose." *Id.* at 1020 (citations omitted).

## II. ANALYSIS

### A. Part One

In this appeal, Plaintiff argues that the ALJ erred by failing to provide: (1) clear and convincing reasons for discounting Plaintiff's testimony, (2) germane reasons for discounting the opinion of Plaintiff's treating mental health therapist, Debbie Hrycyk ("Hrycyk"), and (3) legally sufficient reasons for discounting the opinion of Plaintiff's examining psychologist, Claudia Lake, Psy.D. ("Dr. Lake"). (Pl.'s Opening Br. at 6, 17-18.) The Commissioner "concedes" that the ALJ "harmfully erred" and does not dispute any of Plaintiff's assignments of error. (*See* Def.'s Br. Requesting Remand at 1-7.) Thus, Plaintiff satisfies part one of the credit-as-true standard. *See Lara M. v. Saul*, No. 6:18-cv-00880-SB, 2019 WL 6045585, at *3 (D. Or. Nov. 15, 2019) (holding that the plaintiff met part one of the credit-as-true standard because there was "no dispute that the ALJ failed to provide legally sufficient reasons for rejecting significant, probative evidence").

### B. Part Two

The Court must next address whether the ALJ would be required to find Plaintiff disabled on remand, if the improperly discredited evidence were credited as true. *See Garrison*, 759 F.3d at 1020. As explained below, if the improperly discredited evidence (Plaintiff's testimony and Dr. Lake's and Hrycyk's opinions) were credited as true, the ALJ would be required to find Plaintiff disabled.

Hrycyk's opinion alone would compel a finding of disability. In her questionnaire and medical source statement, Hrycyk stated that Plaintiff suffers from major depressive disorder, severe PTSD and anxiety, chronic suicidal ideation, "clinically significant distress [and]

PAGE 6 – OPINION AND ORDER

impairment in occupational functioning," and difficulty functioning in "all areas of her life," including "getting restful sleep, [activities of daily living], socializing, shopping, education, [and] working." (Tr. 874-79.) Hrycyk added that Plaintiff's impairments are related to past trauma and result in symptoms such as crying spells, hypervigilance, irritability or outbursts of anger, self-destructive behavior, isolating and avoiding others, and stress intolerance.[3] (*Id.*) Based on these findings and others, Hrycyk opined that Plaintiff cannot perform "even the simplest of jobs" on a full-time basis:

> [Plaintiff's] case will come down to whether she could sustain a simple routine, low stress job . . . . The main requirement of such a job is that she be present full-time, eight hours per day, five days per week without special accommodations, or without excessive absences from work. Excessive absences from work is defined as absences greater than two days per month. Is there anything about [Plaintiff's] condition, and the symptoms that she is experiencing that would interfere with her ability to sustain this type of activity?
>
> COMMENTS: At this point in time [Plaintiff] is not [even] able to keep a daily schedule [and] attend to her or her dog's basic needs on a daily basis. Depression [and] [p]ast traumas interfere with this[.] [I]n the past she was able to maintain work . . . however after losing [her] last job [in 2010] she is not able to do so. She get[s] confused about time [and] tasks [and] easily misplaces things. Again, at this point in time working even the simplest of jobs 5 days per [week,] 8 [hours per] day is not doable.

(Tr. 875-76; *cf.* Tr. 61-64, reflecting that the VE testified that if a hypothetical worker missed "more than two days of work" on a regular, ongoing basis, it "would rule out all work at all skill levels").

Hrycyk also opined that Plaintiff suffers from marked limitations (i.e., a substantial loss in the ability to effectively function) in her ability to, among other things, interact appropriately with supervisors. (Tr. 878.) In support of this finding, Hrycyk noted that Plaintiff's "current

---

[3] Plaintiff grew up in an abusive home and was sexually assaulted as a teenager. (Tr. 52, 882-83.)

retriggering for [t]rauma (PTSD) has been significant" and that Plaintiff is "hypervigilant and becomes easily irritated [and] demonstrates self-destructive behavior or angry verbal outbursts." (Tr. 878-79; *cf.* Tr. 61-64, showing that the VE testified that a hypothetical worker could not sustain gainful employment if she responded inappropriately to a supervisor on four or more occasions).

Based on the foregoing, it is clear that if Hrycyk's opinion were credited as true, the ALJ would be required to find Plaintiff disabled on remand. *See [Burget v. Comm'r of Soc. Sec.](#)*, No. [17-cv-01836, 2018 WL 4204057, at \*9 (W.D. Wash. Sept. 4, 2018)](#) ("[I]f the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled because his mental limitations prevent him from sustaining and persisting in full-time employment.").

Dr. Lake's opinion and Plaintiff's testimony, if credited as true, also establish that Plaintiff is disabled. Dr. Lake, an examining psychologist, conducted a clinical interview, administered tests, and reviewed some of Plaintiff's mental health records. (Tr. 882-86.) Dr. Lake opined that Plaintiff (1) cannot "complete a normal workday/workweek without interruptions from a psychiatric condition," given her "chronic emotional instability," and (2) cannot "deal with the usual stress encountered in the workplace . . . , which will only increase her instability." (Tr. 886.) Along similar lines, Plaintiff testified that (1) she suffers from panic attacks "[m]ultiple times a day," (2) she was not able to complete the schooling necessary to become a medical assistant, (3) she called in sick four times during a six- to eight-week externship at a medical clinic, and (4) she "was calling out between probably two to four days a month" prior to her termination in 2010. (Tr. 40, 49-54, 65.) This evidence, if credited as true, establishes that Plaintiff is disabled. (*See* Tr. 60-64, reflecting that the VE testified that "20% off-

task behavior would rule out all work at all skill levels," and that if a hypothetical worker missed "more than two days of work" on a regular, ongoing basis, it "would rule out all work at all skill levels").

For these reasons, the Court concludes that Plaintiff satisfies part two of the credit-as-true standard.

### C. Part Three

The third and final part of the credit-as-true standard asks whether the record has been fully developed and whether further administrative proceedings would serve a useful purpose. *Garrison*, 759 F.3d at 1020. The Court finds that the third part of the credit-as-true standard is satisfied here.

The Commissioner argues that further proceedings would serve a useful purpose because "[t]he ALJ should have the opportunity to resolve the conflict between his finding[] . . . that Ms. Hrycyk did not treat Plaintiff during the relevant period . . . and the treatment record showing that she did." (Def.'s Br. Requesting Remand at 4.) In support of this argument, the Commissioner notes that (1) "Congress authorized the Commissioner, not court, to make findings of fact in Social Security claims," and (2) "[g]iven the ALJ's misunderstanding of the record, the agency should have the opportunity to properly weigh Ms. Hrycyk's opinion and the treatment record, and to evaluate the effect of those records on the rest of the analysis, including other medical opinions and Plaintiff's credibility." (*Id.*) (citation omitted).

The Court finds that the Commissioner's argument fails for two reasons. First, there is no factual conflict to resolve with respect to whether Hrycyk treated Plaintiff during the alleged period of disability. In discounting Hrycyk's opinion, the ALJ made a finding that Hrycyk did not treat Plaintiff during the alleged period of disability. (Tr. 21.) However, the Commissioner concedes that substantial evidence does not support the ALJ's finding. (*See* Def.'s Br.

PAGE 9 – OPINION AND ORDER

Requesting Remand at 2, noting that the ALJ discounted Hrycyk's opinion because she "was not treating the claimant during the time period at issue," and acknowledging that "[t]he record contradicts that finding"). Accordingly, because it is undisputed that Hrycyk treated Plaintiff during the alleged period of disability, the ALJ need not resolve any conflict, and the Court need not make a factual finding, about this issue.

Second, the Commissioner argues that in light of the ALJ's "misunderstanding" about whether Hrycyk treated Plaintiff during the alleged period of disability, the ALJ should be given the opportunity to "evaluate the effect" that Hrycyk's treatment records have "on the rest of the [ALJ's] analysis, including other medical opinions and Plaintiff's credibility." (Def.'s Br. Request Remand at 4.) In other words, the Commissioner argues that the Court should remand this case for further proceedings so the ALJ can "*reevaluate* the medical source opinions and Plaintiff's subjective allegations[.]" (Def.'s Br. Requesting Remand at 3) (emphasis added). Ninth Circuit precedent and the objectives of the credit-as-true standard, however, foreclose such an argument:

> Although the Commissioner argues that further proceedings would serve the 'useful purpose' of allowing the ALJ to revisit the medical opinions and testimony that she rejected for legally insufficient reasons, our precedent and the objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a 'useful purpose' under the [third] part of credit-as-true analysis.

*Garrison*, 759 F.3d at 1021; *see also Benecke*, 379 F.3d at 595 ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004) ("The Commissioner, having lost this appeal, should not have another opportunity to show that [the claimant] is not credible any more than [the claimant], had he lost, should have an opportunity for remand and further proceedings to establish his credibility."); *Lara M.*, 2019 WL 6045585, at

PAGE 10 – OPINION AND ORDER

[\*6](#) ("The Commissioner's request to allow the ALJ to . . . reevaluate the medical evidence, reevaluate Plaintiff's symptoms, reevaluate Plaintiff's RFC, and issue a new opinion, is exactly the 'heads we win; tails, let's play again' scenario that the Ninth Circuit instructs courts to avoid.").

In sum, the Commissioner has not identified a useful purpose that further proceedings would serve, and therefore the Court finds that Plaintiff has satisfied the third part of the credit-as-true standard.

### D. Serious Doubt

Finally, the Commissioner argues that the Court should remand for further proceedings because the record creates serious doubt about whether Plaintiff is disabled. *See generally Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (explaining that even if the credit-as-true standard is met, the court "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled'") (citation omitted). In support of his argument, the Commissioner notes that (1) Plaintiff's depression and anxiety were "largely controlled with medication" during the relevant time period, (2) there were "significant gaps in treatment," in particular between January 2013 and August 2014, and (3) Plaintiff's "work history calls her claim of disability into question." (Def.'s Br. Requesting Remand at 4-5.)

The Court does not have serious doubt about whether Plaintiff is disabled. Contrary to the Commissioner's argument, the record fails to reflect that Plaintiff's mental health symptoms were largely controlled with medication. Instead, the record reflects that Plaintiff's symptoms waxed and waned and that Plaintiff's condition worsened over time. *See generally Garrison*, 759 F.3d at 1017 ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement

PAGE 11 – OPINION AND ORDER

over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."). To be sure, the following record evidence demonstrates that Plaintiff's condition worsened, and that Plaintiff's symptoms were not adequately controlled with medication:

- Plaintiff testified that she was "spiraling downwards" for three to four years prior to her termination in 2010. (Tr. 43.)

- Plaintiff testified that her mental health symptoms have "gotten worse over time" and that she has "not been the same" after suffering a concussion in 2009. (Tr. 199.)

- Plaintiff's mother testified that Plaintiff has "always had problems" with depression and anxiety, Plaintiff has "slowly developed" increased anxiety and lability and decreased "functionality," and Plaintiff's mental health issues have "increased significantly" since 2009. (Tr. 222.)

- Hrycyk stated that Plaintiff's mental health limitations "have been present since [her] teenage years [but] became more profound in 2010 when she lost her job," and that Plaintiff's "retriggering for [t]rauma (PTSD) has been significant." (Tr. 879; *see also* Tr. 418, reflecting that Plaintiff lost her health "insurance in 2010").

- Dr. Lake stated that Plaintiff's "prognosis is guarded given the chronic nature of her mental illness," Plaintiff's "labile emotions and anxiety, including her chronic suicidal thoughts, will be a barrier to her ability to handle employment," and Plaintiff has "developed a life-long history of maladaptive behaviors and compensating behavior to deal with her strong emotions and fears she has experienced." (Tr. 885-86.)

- Plaintiff complained primarily about "anxiety as well as depression." (Tr. 488.)

- Plaintiff's physician stated that Plaintiff's medication was "no longer working," Plaintiff had "[s]ome thoughts of suicide," and two past medications were discontinued based on concerns "about liver toxicity" and because Plaintiff "got bad withdrawals." (Tr. 283.)

- Plaintiff reported that her medications were "not working for her and she [was] experiencing increased depression and troubling thoughts." (Tr. 418.)

- Plaintiff reported that she had "been going downhill" the past year. (Tr. 420.)

- Plaintiff reported that she was "lower than she has ever been" and suffering from an "increase in sleeplessness and . . . nightmares [that were] getting real bad." (Tr. 424.)

- Plaintiff's suicidal ideation and mood and anxiety symptoms had "worsened." (Tr. 429.)

- Plaintiff's provider noted that November 2014 was a "rough month" for Plaintiff, who reported that her depressive symptoms and suicidal ideation had increased. (Tr. 436.)

- Plaintiff reported an improvement in her mood, although she had "more thoughts of wanting to die." (Tr. 441.)

- Plaintiff reported that she was "not doing well on her new med[ications]" and that she "continue[d] to have the persistent thought of 'I want to die,'" and Hrycyk stated that Plaintiff "continue[d] to struggle with the depression." (Tr. 443.)

- Hrycyk noted that Plaintiff was "currently depressed and hopeless with thoughts of death and even suicide." (Tr. 452.)

- Hrycyk noted that there was "some concern" that one of Plaintiff's medications "could be contributing to anger problem[s], mood cycling, and perhaps [an] increase in suicidal ideation." (Tr. 453.)

- Plaintiff "reported worsening of depression" and Plaintiff's provider stated that Plaintiff "has tried a number of antidepressants in the past that either had adv[erse] effects, did not work, or stopped working after a time." (Tr. 456-57.)

- Hrycyk stated that "[t]his year [Plaintiff] has been tried on a number of medications some of which she feels were ineffective and others that she could not tolerate the side effects," and that Plaintiff "does have chronic suicidal thoughts and believes she will kill herself." (Tr. 460-61.)

- Plaintiff complained of "acute suicidal ideation," reported that she continued to suffer from "significant problem[s] with depression," and stated that "due to nausea and vomiting," she "recently went off [an] antidepressant," which Plaintiff believed led to an "increase in [her] depression." (Tr. 306.)

- Plaintiff's provider noted that Plaintiff stopped taking a medication due to adverse side effects, Plaintiff reported that her suicidal ideation and "mood ha[d] worsened and she [was] more labile," Plaintiff had "thoughts of ending her life with a gun, or driving into a wall, or jumping off a bridge," and she helped Plaintiff develop a "safety plan" because there were concerns about whether Plaintiff was "safe to leave the clinic." (Tr. 470.)

- Plaintiff's provider stated that Plaintiff "continue[d] with [her] long-standing [suicidal ideation] problem." (Tr. 308.)

- Plaintiff reported that she had "not been doing well since [a] change of med[ications]." (Tr. 416.)

- Plaintiff stated that she had "extended period . . . without passive or active [suicidal ideation]," which Plaintiff's provider referred to as "a remarkable change for her." (Tr. 353.)

- Plaintiff reported that she had "increased thoughts of suicide." (Tr. 399.)

- Plaintiff reported "no improvement" after three years of mental health counseling. (Tr. 239.)

- Plaintiff reported "really struggling with suicidal ideations [for the] past two weeks," and expressed concern about being "the 3rd close family member to kill themselves." (Tr. 863.)

In conclusion, contrary the Commissioner's argument, the evidence above demonstrates that medication did not control Plaintiff's symptoms.

The Commissioner also relies on gaps in treatment, in particular a gap between January 2013 and August 2014, in arguing that the record creates serious doubt about whether Plaintiff is disabled.[4] The Commissioner's reliance on treatment gaps is misplaced. The record reveals that during the alleged period of disability, there were times during which Plaintiff did not have health insurance and was simply reluctant to seek help. (*See* Tr. 418, noting that Plaintiff lost her "job and insurance in 2010"; Tr. 420, reflecting that Plaintiff did "not have insurance" and that it took Plaintiff "almost 2 months to call" a mental health provider because she "felt so depressed and unmotivated"). That is significant because (1) the Ninth Circuit has "particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is

---

[4] Plaintiff visited her mental health providers between January 2013 and August 2014. (*See* Tr. 283, 286, 478.)

PAGE 15 – OPINION AND ORDER

notoriously underreported and because it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation," *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999) (citation and quotation marks omitted); and (2) the Ninth Circuit has held that it is improper to discount mental complaints based on treatment gaps when the failure to receive treatment was due to a lack of insurance. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (addressing the ALJ's reliance on "gaps" in treatment in discounting symptom testimony and stating that the "failure to receive medical treatment during the period that [claimant] had no medical insurance cannot support an adverse credibility finding"). Under these circumstances, Plaintiff's treatment gaps do not create serious doubt about whether she is disabled.

Finally, the Commissioner argues that Plaintiff's pre-onset work history creates serious doubt about whether Plaintiff is disabled. The Court disagrees. As discussed above, the record demonstrates that Plaintiff's condition has worsened. Accordingly, the Court concludes that Plaintiff's pre-onset work history does not create serious doubt about whether she is disabled. *See Thom v. Berryhill*, No. 6:16-cv-01840-SB, 2017 WL 6329559, at *8-9 (D. Or. Nov. 9, 2017) (explaining that courts have found "reliance on the claimant's pre-onset work history misplaced when the claimant's condition has worsened," and holding that the ALJ erred in discounting a medical provider's opinion because the record suggested that the claimant's "condition had worsened").

In sum, the Court does not have any serious doubt about whether Plaintiff suffered from debilitating mental health symptoms during the relevant time period, and therefore the Court remands this case for an award of benefits.

///

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and REMANDS for an award of benefits.

**IT IS SO ORDERED.**

DATED this 14th day of February, 2020.

STACIE F. BECKERMAN
United States Magistrate Judge